CATHERINE F. ANDERSON *vs.* TOWN OF BILLERICA.

Middlesex.    April 9, 1941. — September 8, 1941.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Notice. Evidence,* Letter, Presumptions and burden of proof.  *Way,*
    Public: defect.  *Letter.*

A finding that a notice of injury due to an alleged defect in a public way
    actually was received by a town clerk was warranted by evidence
    that the notice was sent by registered mail addressed to the clerk, that
    the return receipt for the letter was signed in the clerk's name by the tax
    collector, who occupied the same office, over the words "signature of
    addressee's agent" and that it was "routine" for the tax collector to
    receive mail for the clerk, although the clerk testified that he never
    received the notice and that nobody was authorized to sign his name
    for registered mail.

TORT.   Writ in the Superior Court dated March 15, 1939.
There was a finding for the plaintiff in the sum of $300
by *Good,* J.   The defendant alleged exceptions.

The case was submitted on briefs.

*P. H. Ready,* for the defendant.

*L. F. Garvey,* for the plaintiff.

QUA, J.   In this action to recover for personal injury
caused by a defect in a public way, the only issue is whether
there was evidence to support a finding that the notice of
the name and place of residence of the person injured and
of the time, place, and cause of the injury was received by
the town clerk.   The clerk is one of the town officers to
whom such notice may be given under G. L. (Ter. Ed.) c. 84,
§ 19, as amended (see also § 18, as amended), and the notice
must actually be received.   *Amsler* v. *Quincy,* 297 Mass.
115, 118.   *Regan* v. *Atlantic Refining Co.* 304 Mass. 353, 354.

The notice was seasonably mailed by registered mail to
the clerk.   The "return receipt" over the words "(Signature
or name of addressee)" was signed "R. G. Wright Town
Clerk," and below that over the words "(Signature of ad-
dressee's agent)" was the name "P. J. Mahoney."   Wright

testified that he was town clerk; that he was eighty-one years of age; that he received his mail by going to the post office and getting it; that nobody else got it for him, except when he was on a vacation, and then the assistant clerk got it; that he never authorized anyone to sign his name for registered mail; that he never received the notice; that he had no recollection of receiving it; that Mahoney, the town tax collector, is in the same office that he is in; that in the sixteen years he had been town clerk the collector had never received mail for him; that he had a file of town notices but did not have it in court with him; that he could not say he "ever had any notice like that"; that he did not remember any, that "There may have been"; that he never gets notices of this kind; and that he would have turned it over to the selectmen. Patrick J. Mahoney testified that he had been collector of taxes for fourteen years; that he had nothing to do with the office of town clerk; that it was his handwriting on the registered letter receipt, but he had no recollection of signing it; that he never to his knowledge signed any other registered letter receipt for the town clerk; that he did not know why he signed this one, unless it was because the postmaster asked him to deliver this letter; and that he had searched for it and could not find it. On cross-examination he was asked, "In fourteen years that is the only one you ever signed for the town clerk and it doesn't mean anything to you?" He answered, "It was just routine." "Q. Oh, it was routine? A. Yes." He further testified that he would not say he had done it before; that routine meant that he "signed the card and received a registered letter"; that he had never done it before to his knowledge; that it was not routine; that he did not mean it was routine; that he had never to his knowledge taken any mail from the post office to the town clerk; that the post office is about three hundred yards from the town hall; that "they" have separate boxes at the post office; that he did not "specifically" remember signing for this letter, and had no recollection what he did with it; that he would not take home mail addressed to the town, but if he received a letter he "would naturally deliver it to the party it was addressed

to"; that this letter was addressed to the town clerk; and that he would "naturally" put it on the clerk's desk in his office.

The mailing, postage prepaid (see *Eveland* v. *Lawson*, 240 Mass. 99, 103), of a properly addressed letter is *prima facie* evidence of its receipt by the addressee, and when there is evidence that it was not received the question becomes one of fact. *Huntley* v. *Whittier*, 105 Mass. 391, 392. *Tobin* v. *Taintor*, 229 Mass. 174, 176. *Avisais's Case*, 285 Mass. 56, 58. *Hobart-Farrell Plumbing & Heating Co.* v. *Klayman*, 302 Mass. 508. In this case none of the evidence tending to show lack of receipt by the clerk or lack of agency of the collector to sign for the clerk comes from sources by which the plaintiff is bound. But even if we assume, although without deciding, that the fact of mailing to the clerk lost its *prima facie* quality in this case by the production of the "return receipt" signed in the handwriting of the collector, and that the delivery to the collector became a new starting point, we are still of the opinion that it cannot be said that there was no evidence of actual receipt by the clerk. The probability that one regularly entrusted with a routine duty will perform it in a particular instance is not confined to post office clerks. *Swampscott Machine Co.* v. *Rice*, 159 Mass. 404, 406. *Shea* v. *New York, New Haven & Hartford Railroad*, 173 Mass. 177, 179. *Massachusetts Biographical Society* v. *Howard*, 234 Mass. 483, 487, 488. *Prudential Trust Co.* v. *Hayes*, 247 Mass. 311. *Santarpio* v. *New York Life Ins. Co.* 301 Mass. 207, 209, and cases cited. And in spite of denials and conflict in the testimony of the two town officers there remained some evidence that it was "routine" for the collector to receive mail for the clerk. The lack of memory of these two witnesses may have appeared evasive. It may have been thought that they were biased in favor of the defendant. Both officers had served the same town for many years and both used the same office. These circumstances might have been thought to add some force and credibility to the evidence of routine as against that to the contrary, and the evidence as a whole, even apart from Mahoney's testimony

that he would "naturally" deliver the notice to the clerk, might not unreasonably lead to the conclusion that he did so. *McCarthy* v. *Dedham*, 188 Mass. 204, 206. *Allen* v. *Wilbur*, 199 Mass. 366. *Janse* v. *Boston*, 201 Mass. 348. *Amsler* v. *Quincy*, 297 Mass. 115, 118. *Kenney* v. *Boston Mutual Life Ins. Co.* 306 Mass. 282, 285.

*Exceptions overruled.*