James S. MURRAY, etc., Plaintiff, Appellant,

v.

UNITED STATES of America, Defendant, Appellee.

No. 5941.

United States Court of Appeals First Circuit.

Heard March 5, 1962.

Decided April 2, 1962.

William C. Madden, Asst. U. S. Atty., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN, and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This case, previously before this court, 1 Cir., 292 F.2d 602 (1961), is a suit for refund of alleged overpayment of income tax. The government admitted the overpayment, but alleged that taxpayer had authorized it to transfer that amount to satisfy a deficiency in his sister-in-law's tax, and that it had done so. Taxpayer denied having consented. The district court, trying the case without jury, found for the government. In so doing the court, very properly, stated where it had placed the burden of proof on the issue of consent, but unfortunately, erred in placing it on the taxpayer.[1] For this error we reversed and remanded. After a second trial the court again found for the government, and taxpayer again appeals.

The case was, in substance, resubmitted to the court on the record of the first trial. The evidence as to whether the taxpayer had agreed to the transfer was highly conflicting. One Duffy, superintendent of delinquent tax accounts testified that on a Saturday in February 1953 there was a conference in taxpayer's place of business between taxpayer, taxpayer's accountant, Foster, and himself regarding taxpayer's and his sister-in-law's back taxes; that taxpayer stated he wished his sister-in-law's account cleared up; that in taxpayer's presence Foster told the witness to transfer a credit standing to taxpayer's account to his sister-in-law's; that the witness took this as sufficient consent and did not ask for anything in writing, and subsequently prepared an office memorandum directing this transfer to be made. Foster corroborated Duffy's testimony except with relation to the memorandum, of

James M. Kendrick, Boston, Mass., for appellant.

Earl J. Silbert, Atty., Dept. of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, W. Arthur Garrity, Jr., U. S. Atty., and

1. The court explained in its second opinion that what it had "really meant [was] the burden of going forward with the evidence." We did not so read the first opinion, but if we had it would still have posed difficulties, as will be hereafter developed.

which he had no knowledge. Taxpayer denied that this conference took place and denied that he had authorized the transfer at any other time. An accounting branch employee testified that she had made the credit transfer on the books; that she did not recall the circumstances, but that the customary procedure was not to do this without a written consent from the taxpayer. She stated, however, that she would have made the transfer simply on written instructions from her superior, as there was no absolute requirement that there be a document executed by the taxpayer himself.

While this evidence well warranted a finding for the government, we are compelled to conclude that the court's second decision was no more free from error than the first. The court proceeded as follows. "Initially, the burden of proof, as in all civil cases, is on the plaintiff to establish by a preponderance of the evidence the allegations contained in his complaint." The court stated that the plaintiff had "met this burden" by presenting the evidence that the government made the transfer "without authority." We do not understand these statements in the light of our ruling that the burden of proving consent was on the government. The court then seemingly found that it believed the evidence presented by the government witnesses Duffy and Foster. However, it is not entirely clear that this was an out-and-out finding in view of the balance of the opinion, and it is far from clear, if it was, that it was not affected by the erroneous recital as to the plaintiff's burden of proof.

The court continued, "[T]here is convincing evidence that the transfer [on the government's books] would not have been made without having the necessary authority, either from the plaintiff in writing or from someone in the department. * * * [The fact that] the transfer was made * * * lays the basis for a presumption of regularity of procedure on the part of the Government. In re Ingersoll Co., 148 F.2d 282 (10th Cir.); Atcheson, Topeka & Sante Fe R. R. Co. v. Elephant Butte Irr. Dist., 110 F.2d 767 (10th Cir.)." After further discussion the court concluded, "The burden of going forward with the production of evidence which would overcome the presumption of regularity on the part of the Government has not been met by the plaintiff."

█ Even if we could assume that the court's remarks about the burden of proof were inadvertent, we cannot accept the consequences which the court attributed to the presumption of regularity. This presumption is, as the court said, simply one of regularity of procedure. See 9 Wigmore, Evidence § 2534 (3d ed. 1940). The fact that the government had made the transfer did not raise a presumption that it had done so on taxpayer's authority. Rather, as the court said, it merely indicated that the accounting branch, in view of its regular practice, either had taxpayer's written consent, or written instructions from Duffy. Cf. Santarpio v. New York Life Ins. Co., 1938, 301 Mass. 207, 16 N.E.2d 668. Since Duffy admitted he obtained no writing from taxpayer, the total effect of the "presumption" was that Duffy had given the accounting branch a memorandum. This fact he had already testified to directly.

█ The question at issue was not whether Duffy had made a memorandum, but was whether he had been authorized to do so. Corroboration of the fact that he had made a memorandum was, at best, merely confirmatory evidence of a prior consistent statement. There was no presumption that "meets and overcomes" anything, as ruled by the court, or which placed any burden of going forward on the plaintiff. In fact, as simple corroboration, it would be closer to say that the whole episode was of no consequence whatever. As Wigmore states, corroboration by proof of other consistent statements would be "both irrelevant and cumbersome to the trial; and is rejected by all Courts." Id., § 1124. Indeed, it is normally rejected as irrelevant even after the witness has been impeached. Wilson v. Jeffrey, 1951, 328 Mass. 192, 102 N.E. 2d 426; cf. Commonwealth v. Bedrosian,

1924, 247 Mass. 573, 142 N.E. 778; Glover v. Callahan, 1937, 299 Mass. 55, 12 N.E.2d 194.

 It was error for the court to hold that the presumption of regularity placed a burden or shifted a burden of any sort. Reading the opinion as a whole we cannot, as the government would have us do, isolate certain sentences and conclude that the court properly found in the government's favor. There must be a new trial. Perhaps under the circumstances fairness to both parties indicates a fresh view of the evidence by another judge.

Judgment will be entered vacating the findings and judgment of the District Court and remanding the case for further proceedings not inconsistent herewith.